## ESTATE OF ERNST MIEHLE, DECEASED.

### [No. 13,071; decided January 24, 1893.]

Will—Right to Withdraw from Files.—Where a will has been filed for probate but the evidence adduced is insufficient to prove its execution, the court has no authority to order the withdrawal of the will from the files and direct a commission to be issued to take the testimony of the subscribing witnesses in a foreign land, the will to accompany the commission and be returned with it to the court.

Carl T. Graef, for the applicant.

Gustav Gutsch, contra.

COFFEY, J. On December 30, 1892, an instrument purporting to be the last will of George E. Miller was filed in this court: Code Civ. Proc., sec. 1298.

On January 9, 1893, George Ross, the person named in said instrument as the sole devisee thereunder and as the sole executor thereof, was, upon his application, by this court, appointed special administrator of the estate of said George E. Miller, who is alleged to have died on the twenty-fourth day of August, 1892, at Penang, Straits Settlements, and to have been a resident of the city and county of San Francisco, state of California, at the time of his death. It is further alleged that the true name of the testator was Ernst Miehle.

The instrument filed as aforesaid bears date on the twenty-third day of August, 1892.

Application having been made to the court for the admission of the alleged will to probate, the genuineness of the testator's signature was proved on the hearing. It was further shown that the persons who appear to have signed the instrument as subscribing witnesses are the commander, purser and chief mate of the steamship "Lightning," which plies between ports of the Chinese and Indian Seas, and that none of them can be brought within the jurisdiction of this court for the purpose of examination.

The evidence so far presented is insufficient to prove the will, and the applicants for probate desire now to take the depositions of the subscribing witnesses at Penang, Straits Settlements, where they can be most conveniently examined, and to exhibit to them the original document.

The court is accordingly asked for an order authorizing the withdrawal of the alleged will from the files and directing a commission to be issued to the Consular Agent of the United States at Penang to take said depositions; the will to accompany the commission, and to be returned with the same to the court.

Questions arise, first, whether the court has the power to make the order; and, second, if so, whether it should make the order in the present case.

Under our law it is the duty of the clerk to "take charge of and safely keep or dispose of, according to law, all books, papers and records which may be filed or deposited in his office" (section 4204, Political Code, and section 111, County Government Act of March 14, 1883: Stats. 1883, p. 299). A distinction is thus drawn between "books," "papers" and "records." Section 1855, subdivision 3, Code of Civil Procedure, mentions "records" and "other documents" in the custody of public officers. To which of these classes does the instrument under consideration belong?

The mere filing of an instrument purporting to be a last will does not make it a record. Nor does it seem that proceedings resulting in the granting of special letters of administration to the person named as executor would have that effect: See the definitions of "record" in Webster's Dictionary; also, Code Civ. Proc., sec. 1904. For the court, which, in making the appointment of a special administrator, must

give preference to the person entitled to letters testamentary (Code Civ. Proc., sec. 1413), cannot, in strictness of law, use an instrument, not yet admitted to probate, as evidence. In Castro v. Richardson, 18 Cal. 480, it was held: "That the record of probate is the only proof upon which a party relying on the will can offer it in evidence."

If the last-mentioned decision correctly defines the law, then it is not only immaterial whether an instrument filed as a will, but not yet probated, may be designated as a record or not, but it is also clear that section 1950, Code of Civil Procedure, does not support the application at bar. According to that section a record, "a transcript of which is admissible in evidence," may, in certain cases, be removed from the custody of its legal keeper upon an order of the court; but if the original itself cannot be admitted as evidence, a transcript is likewise inadmissible.

All other cases of (intentional) removal are covered by sections 113 and 114 of the Penal Code, which make the removal a criminal offense: See section 7, Penal Code, as to "willful."

In Houston v. Williams, 13 Cal. 27, 73 Am. Dec. 565, much is said about the inherent right of a court to control its records and papers on file, but the reasoning does not apply to the present case nor enlarge the scope of section 1950, Code of Civil Procedure.

The court, consequently, lacks the power to authorize the withdrawal. If it were otherwise, the present necessity of such an exceptional measure might, in the second place, be seriously questioned. The execution of the instrument is alleged to have taken place about five months ago, and the remembrance of the facts on the part of the subscribing witnesses must be fresh and distinct; if they swear that they never witnessed but one last will of the testator, and that this occurred on the day preceding his death, their testimony, in connection with other facts to be elicited by the examination, will go far toward establishing the identity of the instrument; and if more than a reference, in the interrogatories, to dates and surrounding circumstances were needed, either a simple or a photographic copy of the paper, which covers only one page, would, in all likelihood, answer the purpose.

Counsel for applicant seems to attach importance to the claim that if the petition were granted and the alleged will, with the commission, forwarded by the clerk of the court, through the United States mail, to the Consular Agent of the United States at Penang, who, by reason of his appointment as commissioner and of his acceptance thereof, would be an officer of the court, the document might be deemed at all times to have remained in the custody of the court, or at least, of the United States. But the control of the court and its right to compel the performance of duties by its officers do not extend beyond the territorial limits of the state. If the commissioner, whether an officer of the United States or any other person, residing on foreign soil, should fail to use and return the paper as directed by the court, the latter, in its judicial capacity, could do nothing to enforce obedience. The aid of the federal government, and probably diplomatic intercession, would have to be invoked for that purpose. In view of these and of other risks, incidental to the proposed removal, and of possible interests which parties who may hereafter appear in the matter of said estate may have in the original instrument, the court cannot properly deprive itself and the clerk of the actual control over the document, unless by law expressly and distinctly authorized so to do. Compare, in this connection, the "limitations" referred to in Houston v. Williams, 13 Cal. 24, 28, 73 Am. Dec. 565.

These views, if sound, render it unnecessary to examine the question whether, if the court should grant the request, and the original document should not be afterward produced, either a simple or a certified copy of it could be admitted as evidence. And it would be difficult, if not impossible, to anticipate the causes of such nonproduction, and the various grounds upon which, under our statutes and decisions—as, e. g., sections 1299, 1937 and 1855, subdivisions 1 and 3, Code of Civil Procedure, and Gordon v. Searing, 8 Cal. 49—the court might be asked to admit the copy in the place of the original.

It follows that the application for removal should be denied.